Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Roxanne Holeva*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Roxanne Holeva,

Plaintiff,

v.

Liberty Life Assurance Company of Boston; Wells Fargo & Company; Wells Fargo & Company Disability Plan,

Defendants.

Case No.

**COMPLAINT**

Now comes the Plaintiff Roxanne Holeva (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover

employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

***Parties***

2. At all times relevant to this action, Plaintiff was a resident of Navajo County, Arizona.

3. Upon information and belief, Defendant Wells Fargo & Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty Mutual"). The specific Liberty Mutual group long-term disability policy is known as Group Policy No.: GF3-850-289424-01 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4. Upon information and belief, the Policy was included in and part of an employee benefit plan, specifically named the Wells Fargo & Company Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5. Upon information and belief, Liberty Mutual functioned as the claim administrator of the Policy. However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Liberty Mutual.

6. Liberty Mutual operated under a financial conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7. Liberty Mutual's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8. The Company, Liberty Mutual and the Plan conduct business within Navajo County and all events giving rise to this Complaint occurred within Arizona.

***Venue***

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

***Nature of the Complaint***

10. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11. Plaintiff also seeks a determination in this action that she is disabled and meets the "Any Occupation" definition of disability set forth in the Plan and/or Policy as all of the evidence she submitted to Liberty Mutual supports a determination by the Court that she meets the Plan and/or Policy's "Any Occupation" definition of disability, such that she is also entitled to these benefits. Plaintiff believes this issue is ripe before the Court since

the "Own Occupation" timeframe in the Plan and/or Policy has expired at the time of filing this Complaint, which was August 27, 2016.

12. After working for the Company as a loyal employee in the position of a Personal Banker I, Plaintiff became disabled on or about February 26, 2014, and has remained continuously disabled since that date due to serious medical conditions. Plaintiff has remained continuously disabled as that term is defined in the relevant Policy for both "Own Occupation" and "Any Occupation" disability benefits due to medical conditions that are not "Pre-Existing Condition" as that term is defined in the Policy.

13. Following the onset of her disability, Plaintiff filed a claim for short-term disability benefits which was administered and approved by Liberty Mutual. The relevant short-term disability Plan was self-insured by the Company, meaning that it paid all short-term disability benefits if Plaintiff was found disabled by Liberty Mutual. Plaintiff's short-term disability benefits have been paid and exhausted with the Company.

14. Following the exhaustion of her short-term disability claim and benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Liberty Mutual. Liberty Mutual made every decision in Plaintiff's long-term disability claim, which was to deny it.

15. The fact that Plaintiff's short-term disability claim was approved by Liberty Mutual using a similar, if not identical, definition of disability as is contained in the long-term disability Policy, is relevant evidence for this Court to consider with regard to the unreasonableness of Liberty Mutual's denial of her long-term disability claim. Liberty Mutual's denial of Plaintiff's long-term disability claim was a result of its conflict of interest and its desire to save money.

16. Upon information and belief, the relevant Liberty Mutual Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> "Disability" or "Disabled" means:
>
> i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

17. In support of her claim for long-term disability benefits, Plaintiff submitted to Liberty Mutual comprehensive medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

18. In a letter dated September 17, 2014, Liberty Mutual informed Plaintiff it was denying her claim for long-term disability benefits due to a lack of "…the necessary proof to verify disability..."

19. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Liberty Mutual's September 17, 2014 denial of her claim and submitted additional medical evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

20. As part of its review of Plaintiff's claim for long-term disability benefits, Liberty Mutual obtained three (3) medical records only "paper reviews" of Plaintiff's claim from physicians named Ronald J. Orleans, M.D., Edward Darell, M.D. and Jeffrey Schiffman, M.D.

21. Upon information and belief, Plaintiff alleges Drs. Orleans, Darell and Schiffman may be long time medical consultants for Liberty Mutual and/or the disability

insurance industry. As a result, Plaintiff asserts Drs. Orleans, Darell and Schiffman may have an incentive to protect their own consulting relationships with Liberty Mutual and/or the disability insurance industry by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to disability insurance companies and that are relied upon to deny disability claims.

22. In a letter dated November 12, 2014, Liberty Mutual informed Plaintiff it was denying her claim for long-term disability benefits due to its belief that she was "…able to perform the duties of [her] Own Occupation." Liberty Mutual did not allege or assert that its denial of Plaintiff's claim was in any way related to a pre-existing medical condition.

23. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Liberty Mutual's November 12, 2014 denial of her claim and submitted additional medical and vocational evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

24. In support of her claim, Plaintiff submitted to Liberty Mutual a June 4, 2015 checklist letter completed by her board certified treating physician who opined and confirmed that Plaintiff, "…would not be able to function at a sedentary work category," and that she "…has been unable to work in any occupation since February 28, 2014 and will continue to be unable to indefinitely."

25. Plaintiff also submitted to Liberty Mutual a May 20, 2015 checklist letter completed by another board certified treating physician who opined and confirmed that Plaintiff has been unable to work in any occupation since February 28, 2014 and will continue to be unable to work in any occupation indefinitely.

26. Plaintiff submitted to Liberty Mutual a June 16, 2015 narrative letter authored by a third board certified treating physician who also opined and confirmed that Plaintiff is disabled and unable to work in her prior occupation due solely to medical conditions that are not "Pre-Existing Conditions" as that term is defined in the Policy.

27. Plaintiff submitted to Liberty Mutual a June 16, 2015 checklist letter completed by the same board certified treating physician who confirmed it is her medical opinion, "…[it is] reasonable to assume [Plaintiff] has been unable to work in her prior occupation as a Personal Banker I…since February 28, 2014."

28. Plaintiff submitted to Liberty Mutual a January 30, 2015 narrative letter authored by her treating medical professional who confirmed Plaintiff is suffering from symptoms resulting from medical conditions that are not "Pre-Existing Conditions" as that term is defined in the Policy.

29. Plaintiff submitted to Liberty Mutual a Functional Capacity Evaluation report dated April 3, 2015, wherein after an extensive several hour evaluation, a qualified physical therapist concluded, "…[Plaintiff] would not be able to function at a ***sedentary work category***." (Original emphasis).

30. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated June 5, 2015, who after interviewing Plaintiff and reviewing the aforementioned evidence along with the "Own Occupation" and "Any Occupation" definitions of disability concluded, "It is clear from a vocational standpoint that [Plaintiff] will not be able to maintain any gainful employment. [Plaintiff] meets the definition of disability."

31. In her June 5, 2015 vocational report, Plaintiff's vocational expert confirmed Liberty Mutual misclassified Plaintiff's prior occupation as being in the *Sedentary* work

category, when the *Dictionary of Occupation Titles,*[1] an authoritative vocational resource, classifies Plaintiff's prior occupation as a Personal Banker I in the *Light* exertional work category. Liberty Mutual misclassified Plaintiff's occupation because a *Light* exertional occupation is significantly different than and requires greater physical exertional abilities in terms of sitting, standing, walking, lifting and carrying weight, etc. than does a *Sedentary* occupation.

  32. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

  33. As part of its final review of Plaintiff's claim for long-term disability benefits, Liberty Mutual obtained a medical records only "paper review" of Plaintiff's claim from a physician of its choosing. Liberty Mutual did not disclose the identity of the reviewing

---

[1] S-Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

physician to Plaintiff, either during its administrative review of her claim or following its final denial.

34. Upon information and belief, Plaintiff asserts the reviewing physician may be a long time medical consultant for Liberty Mutual and/or the disability insurance industry. As a result, the reviewing physician may have an incentive to protect his/her own consulting relationship with Liberty Mutual and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that supported the denial of Plaintiff's claim.

35. In letters dated May 11, 2015, May 22, 2015, June 17, 2015 and July 14, 2015, in order to engage Liberty Mutual in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Liberty Mutual and the opportunity for her and her medical professionals to respond to the reviews prior to Liberty Mutual rendering a determination in her claim.

36. Prior to rendering its final denial in Plaintiff's claim, Liberty Mutual refused to honor Plaintiff's request and never shared with her the medical records only "paper review" authored by its reviewing medical professional so she could respond to the report and perfect her claim. Liberty Mutual's failure to provide Plaintiff with the opportunity to respond to the medical professional's report is an ERISA procedural violation, it precluded a full and fair review pursuant to ERISA and also violated Ninth Circuit case law. On this issue, the Ninth Circuit held in *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, ***another for the final denial***. They both wrote

their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement" (emphasis added).

37. In a letter dated October 22, 2015, notwithstanding Plaintiff's aforementioned evidence which proved that she met any definition of disability in the Policy, Liberty Mutual notified her it had denied her claim for long-term disability benefits.

38. For the first time, in its October 22, 2015 final denial letter, Liberty Mutual notified Plaintiff it had determined "...several of [her] reported conditions would be excluded under the Policy's pre-existing condition exclusion." The reason provided by Liberty in its October 22, 2015 denial letter is inconsistent with the reason it provided in its initial denial dated November 12, 2014. Liberty Mutual's inconsistent denials are palpable evidence of its conflict of interest at work and its overreaching efforts to intentionally and unlawfully deny Plaintiff's claim.

39. Liberty Mutual's October 22, 2015 denial is erroneous and unlawful because although one or some of Plaintiff's disabling medical conditions may have been subject to a "Pre-Existing Condition" exclusion as set forth in the Policy, not all of her disabling medical conditions are. As referenced *infra*, one of Plaintiff's treating medical providers rendered an opinion that she is unable to work in any occupation due to disabling medical conditions that are not "Pre-Existing Conditions" and are not subject to the "Pre-Existing Condition Exclusion" which is set forth in the Policy.

40. In its final denial letter dated October 22, 2015, Liberty Mutual notified Plaintiff she had exhausted her administrative levels of review and that she could file a civil action lawsuit in federal court pursuant to ERISA.

41. Liberty Mutual's October 22, 2015 final denial letter is clear evidence that it failed to violated its fiduciary duty and failed to provide a full and fair review, while in the process committing ERISA procedural violations that were specifically enacted to protects individuals such as the Plaintiff. Liberty Mutual violated ERISA for numerous reasons including but not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met all definitions of disability in the Policy and that her claim and disabling medical conditions are not subject to a "Pre-Existing Condition" exclusion.

42. Subsequent to Liberty Mutual's October 22, 2015 final denial, Plaintiff was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

43. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of February 28, 2014, Plaintiff's alleged date of disability. Plaintiff's evidence was so compelling that the SSA approved her claim without her even needing to attend a hearing before an Administrative Law Judge.

44. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Liberty Mutual Policy for the first 24 months of disability, and substantially similar to the Policy's definition of disability after the first 24 months of disability. Therefore, the SSA's approval of Plaintiff's claim and the fact that SSA has continued to pay her benefits through the present date is relevant evidence for this Court to consider with regard to the unreasonableness and unlawfulness of Liberty Mutual's decision to deny Plaintiff's claim and benefits.

45. In evaluating Plaintiff's claim on appeal, Liberty Mutual owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it "solely in [her] best interests and other participants" which it failed to do. [2]

46. Liberty Mutual failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal in order to prove not only that she is disabled as that term is defined in the Policy, but disabled due to a medical condition or medical conditions that are not subject to a "Pre-Existing Condition" exclusion as set forth in the Policy. Liberty Mutual's failure to investigate the claim and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is evidence she did not receive a full and fair review.

47. Plaintiff asserts Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by concluding she is not "disabled" due to a medical condition or medical conditions that are not considered "Pre-Existing Condition" and are not subject to the "Pre-Existing Condition Exclusion" as those terms are defined in the Policy; by erroneously misclassifying Plaintiff's prior occupation as a Personal Banker I in the *Sedentary* work

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

category; by failing to respond to Plaintiff's vocational expert's allegation that Liberty Mutual misclassified Plaintiff's prior occupation in the *Sedentary* work category rather than in the *Light* work category; by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the Policy allowed for one which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all of her medical conditions and the work limitations set forth in her medical evidence as well as the impact the combination of these medical conditions and limitations have on her ability to work in any occupation; by failing to engage Plaintiff in a dialogue so she could respond to the reviewing medical professional's report by submitting the necessary evidence to perfect her claim so she could prove that she is "disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

48. Plaintiff asserts a reason Liberty Mutual provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Liberty Mutual undertook as the decision maker and the payor of benefits. Liberty Mutual's conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

49. When Liberty Mutual denied Plaintiff's claim and asserted its "Pre-Existing Condition Exclusion" Policy provision, it saved a significant amount of money.

50. Plaintiff is entitled to discovery regarding Liberty Mutual's aforementioned conflicts of interest. Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by Liberty Mutual to retain a reviewing medical professional in Plaintiff's claim and of *any* individual who reviewed her claim. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Liberty Mutual's decision to deny her claim.

51. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Liberty Mutual as referenced herein abused any discretion that may have been afforded in the Policy and are so flagrant that they justify *de novo* review.

52. As a direct result of Liberty Mutual's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.

53. Plaintiff alleges that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

54. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

55. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that she meets the "Own Occupation" definition of disability set forth in the Plan and/or Policy due to a medical condition and/or medical conditions that are not subject to a "Pre-Existing Condition" or policy exclusion as that term is defined and set forth in the Plan and/or Policy and that she is entitled to these disability benefits in addition to any other non-disability employee benefits she may be entitled to, from the date she was first denied all these benefits through the date of judgment with prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

C. Assuming the issue is ripe before the Court, Plaintiff seeks an Order that the evidence in Plaintiff's claim is sufficient to prove that she also meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy due to a medical condition and/or medical conditions that are not subject to a "Pre-Existing Condition Exclusion" as that term is defined in the Plan and/or Policy and that she is entitled to accrued benefits, along with any other non-disability employee benefits she may be entitled to as a result of that Order through the date of judgment, with pre-judgment interest thereon;

D. Assuming the Court issues an Order that Plaintiff meets the "Any Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order directing Defendants to continue paying these disability benefits and any other non-

disability employee benefits she may be entitled to as a result of that Order, until such a time as she meets the conditions for the termination of these benefits;

E. Alternatively, if the Court determines that Plaintiff meets the "Own Occupation" definition of disability in the Plan and/or Policy for that entire timeframe, but the Court declines to make a determination as to whether Plaintiff meets the Plan and/or Policy's "Any Occupation" definition of disability, then Plaintiff seeks an Order remanding her claim to the Plan Administrator and/or Defendants for an administrative review where she can submit new and additional evidence so the Plan Administrator may determine whether she meets the "Any Occupation" definition of disability;

F. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g), including for any Court ordered remand to the Plan Administrator and/or Defendants; and

G. For such other and further relief as the Court deems just and proper.

DATED this 3rd day of November, 2016.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff